On March 19, 1928, a final decree was entered settling the guardian's final account, and the guardian has appealed therefrom, questioning certain provisions of the decree which will be pointed out as we proceed.
George F. King died in 1907, leaving a widow and a minor son, George King, then about two years of age. The widow apparently acted as administratrix, and the probate was closed and the estate distributed in equal shares to the widow and son in 1909. *Page 121 
The child, at all times, lived with the mother, and she provided for it and for her own needs by using, indiscriminately, for that purpose, the common property of both. In 1910 the widow remarried, and the child became a member of the new family. In 1912 the land, which had been distributed in equal undivided shares to both, was partitioned between them, and thereafter each was the owner of a separate tract in which the other had no interest. In November, 1912, the mother was appointed guardian of the person and estate of the minor, but continued thereafter, as theretofore, to use all moneys coming into her hands, including the rent from the ward's land, indiscriminately, keeping no account as guardian. The land in question was farm land, and twice, during the period covered by the guardianship, the guardian and her family occupied the place for six months' periods, covering the crop season each time, but charged herself only one half the annual rental on each occasion, upon the theory that she had occupied it but half of the year. The trial court, by its final decree, charged the guardian with a full year's rent for each of these six months' periods, on the theory that, having had possession during the crop year, she had received the full value of the use of the property for a whole year.
The guardian also claimed thirty dollars per month for the support of the minor for three years and ten months, covering the period from the final settlement of the father's estate to the time she was appointed guardian, or a total of one thousand three hundred eighty dollars. By her testimony at the hearing, and now, she seeks that allowance, not as a direct claim, but argues that the ward's estate was reduced by the expenditure of that amount before her appointment and there is that much less for which she should account. *Page 122 
The situation is further complicated by the fact that the minor, on coming of age and before the final account was filed, and without the knowledge of the guardian, sold his land to one whom the trial court found acted in good faith and without any knowledge of facts indicating that the guardian could, or would, claim anything as still due her and payable out of the ward's estate.
The decree, after charging the guardian with rent amounting to four hundred fifty dollars, as above indicated, allowed the item of one thousand three hundred eighty dollars as between the guardian and the ward only, because the ward did not appear and object and, perhaps, also because the ward had other property, the proceeds of the disposition of the land sold by him, which might be subjected to the payment of this item. But the question of whether such allowance was in effect a personal judgment against the ward or can form the basis for reaching other property, is not now here. The balance thus found due the guardian amounted to $1,049.57, or in other words, without this item, the guardian was actually indebted to the ward's estate, but the decree specifically provides that such balance, with attorney's fees as allowed, and costs, all amounting to less than $1380, shall not in any wise affect the rights of the purchaser of the land.
The first question is one of fact only. There was evidence that the two six months' periods of occupancy covered the crop year in each case. It was brought out that, after the period of occupancy, there was, or might have been, some fall pasturage available, but no one attempted to fix a value therefor. The trial court, sitting in the county where the land lies, may have taken into consideration matters of common knowledge, of which judicial notice should be taken, *Page 123 
but in any event we cannot say that the evidence preponderates against the findings of the court on that subject.
As to the second question, we are not concerned with the allowance of the maintenance charge as against the ward, since he has not appealed, and if what we shall say may indicate a doubt as to whether that item should have been allowed at all, it will not affect the judgment as to him or determine its nature or value, for that, whatever its force, has become final.
[1] Undoubtedly advances and disbursements made by a guardian to preserve and protect the estate of the ward may be presented in the final account and allowed as a lien or charge against the property so preserved and protected, since such advances in all respects partake of the nature of equitable liens. A guardian is, of course, but a trustee, and the general rule applicable to all trustees is stated by Pomeroy in his Equity Jurisprudence (4th ed.), vol. 3, § 1085, as follows:
"The trustee is entitled to be allowed, as against the estate and the beneficiary, for all his proper expenses out of pocket, which include all payments expressly authorized by the instrument of trust, all reasonable expenses in carrying out the directions of the trust, and, in the absence of any such directions, all expenses reasonably necessary for the security, protection, and preservation of the trust property, or for the prevention of a failure of the trust. He is also entitled to be indemnified in respect to all personal liabilities incurred by himself for any of these purposes. Where a trustee properly advances money for any of the above-mentioned objects, so that he is entitled to reimbursement, he also has a lien as security for the claim, either upon the corpus of the trust property, or upon the income, as the case may be; but for moneys improperly paid there is no lien."
As a general rule we think it may be said that a guardian may expend the income of the ward's estate *Page 124 
in his support and education, but even then an order of the court should be first obtained. But when it comes to encumbering or disposing of the real estate of the ward for that purpose, especially where the guardian is a parent of the ward, no court would permit such disposition except upon the clearest showing of necessity.
"One of the most usual purposes for which lands of a minor may be ordered to be sold, when necessary, is his support, maintenance, and education, and this will ordinarily be done when, and only when, the income of the estate, and the corpus
of the personal estate, is insufficient therefor, and only while the ward is living. But where the guardian is also the parent of the infant ward, he will not be permitted to sell the ward's real estate for such purpose, unless it is clearly shown that he is unable to support and educate him." 28 C.J., 1173.
"The right of the guardian to charge for support or education provided for the ward is sometimes modified by his sustaining a parental or quasi-parental relation to the ward. If he be the ward's father, the duty of furnishing support rests upon him, and he cannot charge the cost of such support on the guardianship account. The rule is not so rigorous in the case of the mother; and if the child has property the mother is not bound to provide for its maintenance where the father would be, but is entitled to have his income applied thereto. And a stepfather is of course not bound to maintain the children of his wife by a former husband. But if he voluntarily assume the parental relation and receive them into his family under circumstances such as to raise a presumption that he has undertaken to support them gratuitously, he cannot afterward claim compensation for their support. So with the mother, or with any other relation or friend who takes the ward into his home and assumes a parental relation to him; if he supports him without intimating any intention of charging him for the support, the inference is that it was furnished gratuitously; and the guardian cannot afterward charge therefor." 12 R.C.L., 1158. *Page 125 
So here, from the beginning, the ward was a member of his mother's family and never at any time, not even now, is there the slightest showing of her inability to provide for his reasonable needs. The stepfather also received the ward into his family, and there is nothing to indicate that the usual presumption should not apply. With the record in this condition, the trial court might very well have refused to allow the item of support as against anyone, or at all, but clearly he was right in directing that the item was not a charge against the ward's real estate at the time the sale was made, and that it should not be enforced against that property in the hands of a purchaser for value, without knowledge of the facts.
The ingenious argument that this item depleted the ward's estate before the guardian was appointed, presented to excuse nonpresentation of the claim and to avoid the bar of the statute of limitations, cannot now avail, because nothing of the ward's estate had been consumed when the guardian was appointed, save only the income which had theretofore accrued, and the wrongful or unauthorized use of that prior income cannot now form the basis for a charge or encumbrance against the corpus of the estate.
The judgment is affirmed.
PARKER, MAIN, MILLARD, and HOLCOMB, JJ., concur.